# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

(1) KINDRED REHAB SERVICES, INC. )
d/b/a REHABCARE, )
)
        Plaintiff, )
)
v. ) Case No. 17-CV-910
)
(1) MOUNT CARMEL HEALTH CARE, )
LLC d/b/a BURLINGTON MEDICAL AND )
REHAB CENTER; )
)
(2) COLONIAL MANOR HEALTH )
CARE, LLC d/b/a COLONIAL MEDICAL )
AND REHABILITATION CENTER; )
)
(3) EASTVIEW HEALTH CARE, )
LLC d/b/a EASTVIEW MEDICAL AND )
REHABILITATION CENTER; )
)
(4) SAN LUIS HEALTH CARE, LLC )
d/b/a MAPLE RIDGE REHAB AND CARE )
CENTER; )
)
(5) NORTH RIDGE HEALTH CARE, LLC )
d/b/a NORTH RIDGE MEDICAL AND )
REHABILITATION CENTER; )
)
(6) SHERIDAN MEDICAL, LLC d/b/a )
SHERIDAN MEDICAL COMPLEX; and )
)
(7) WOODSTOCK HEALTH CARE, LLC )
d/b/a WATERS EDGE REHAB AND )
CARE CENTER, )
)
        Defendants. )

1

# BRIEF IN SUPPORT OF ALL DEFENDANTS' MOTION FOR SEPARATE TRIALS, OR, IN THE ALTERNATIVE, TO SEVER CERTAIN CLAIMS

In support of this Motion, the Defendants provide the following brief.

## ARGUMENTS AND AUTHORITIES

The Federal Rules of Civil Procedure provide the court with two mechanisms for guarding against potential prejudice and confusion that could occur because of the multiple parties and distinct claims in this case. First, Rule 42(b) gives this court the discretion to separate the trial on Plaintiff's claims against each individual defendant long-term care facility from the Plaintiff's claims against the other, unaffiliated long-term care facilities named as co-defendants. Second, Rule 21 gives the court the discretion to sever the claims of each defendant from those claims directed towards the other defendants. While both mechanisms would prevent undue confusion for the jury and prejudice to the defendants individually, severance of the claims would result in two independent actions.

### Proposition I

### Separate Trials of Plaintiff's Claims Against Each Defendant Individually Are Warranted Under Federal Rule of Civil Procedure 42(b)

Federal Rule of Civil Procedure 42(b) provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

The three distinct criteria established by Rule 42(b) are convenience, prejudice, and judicial economy. "Only one of these criteria need be met to justify bifurcation." *Saxion v. Titan-C- Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) (citing *MCI Communications Corp. v. Am. Tel. & Tel. Co.*, 708 F.2d 1081, 1166 (7th Cir. 1983)).

2

A court's decision to bifurcate is within its discretion and such decisions are reviewed under the abuse of discretion standard. "District courts have broad discretion in deciding whether to sever issues for trial and the exercise of that discretion will be set aside only if clearly abused." *U.S. ex rel. Bahrani v. ConAgra, Inc.*, 624 F.3d 1275, 1283 (10th Cir. 2010) (citing *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1285 (10th Cir. 1999). "[A] paramount consideration in ruling on a motion to bifurcate is [ensuring] a fair and impartial trial to all litigants." *Beauchamp v. Russell*, 547 F. Supp. 1191 (N.D. Ga. 1982) (citing *Moss v. Associated Transp., Inc.*, 344 F.2d 23, 26 (6th Cir. 1965)). Simply because there may be some repetition of testimony is not reason enough to deny a motion to separate where there is a risk that one defendant's actions could "contaminate" the case of another defendant. *See Donato v. Fitzgibbons*, 172 F.R.D. 75, 85 (S.D.N.Y. 1997); *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 965 (10th Cir. 1993) ("We conclude that the issues are clearly separable. Although the same witnesses may testify in both phases, the issues and testimony are different.").

A separate trial is appropriate where one defendant could "bear the burden of answering for . . . the alleged misdeeds" of another defendant. *Wells v. City of Dayton*, 495 F. Supp. 2d 793, 795 (S.D. Ohio 2006); *Brunson v. City of Dayton*, 163 F. Supp. 2d 919 (S.D. Ohio 2001). In *Wells,* the court concluded that separate trials of the plaintiff's § 1983 claims against individual police officers and the plaintiff's § 1983 claims against the City of Dayton were necessary to avoid prejudice to the police officers. 495 F. Supp. 2d at 795. The court explained, "[i]f a single trial were held on all of the claims in this case, evidence offered against Dayton regarding incidents of alleged misconduct by police officers, unrelated to the incident in question in this case but relevant to the question of municipal

3

liability for a policy or practice, would be highly prejudicial" to the police officers. *Id.* "Defendants cannot be made to bear the burden of answering for all of the alleged misdeeds of every past and current Dayton police officer, when defending against the allegations of the Plaintiffs as to the incidents that occurred in this case." *Id.* A jury must be allowed to consider the evidence regarding the particular incident at hand, "with its focus on that evidence, unimpaired by a torrent of information concerning the conduct of police officers in other unrelated situations at other times." *Id.* The court further stated, "[i]t bears emphasis that any inconvenience or lack of economy which would flow from the necessity of conducting two trials would pale in comparison to the prejudice which would befall [the individual police officers], if Plaintiffs' claims against them were to be resolved in the same trial as the Plaintiffs' . . . claim against Dayton." *Id.* at 796.

Moreover, Judicial efficiency is "served" when claims involving different questions of law or fact are tried separately. *See Cheek v. City of Edwardsville, Kan.*, 514 F. Supp. 2d 1220, 1235 (D. Kan. 2007) *aff'd sub nom. Cheek v. City of Edwardsville, Kansas*, 324 F. App'x 699 (10th Cir. 2008). In *Cheek*, the court denied a motion to consolidate one police officer's lawsuit with two other police officer's lawsuits against the city for trial purposes even though the cases had been consolidated for pretrial purposes. *Id.* at 1235-35. The court explained, plaintiffs Cheek and Doty's cases continue to share common questions of law or fact relating to the severance provisions in their employment contracts. Because those cases no longer contain § 1983 First Amendment retaliation claims, however, the court finds that continued consolidation with plaintiff Harbour's case is no longer warranted. Judicial efficiency would best be served by addressing plaintiffs Cheek and Doty's remaining breach of contract claims in a context separate and apart from

4

plaintiff Harbour's § 1983 First Amendment retaliation and FMLA claims. *Id.* at 1236.

Similarly, separate trials are appropriate where extraneous issues may "needlessly confuse and misdirect the jury from the central issues of [a] case." *Sound Video Unlimited, Inc. v. Video Shack Inc.*, 700 F. Supp. 127, 146 (S.D.N.Y. 1988) (citation omitted). In *Sound Video*, the court determined that wiretap counterclaims should be tried separately from fraudulent dealing claims arising out of an aborted merger. *Id.* The court found significance in the fact that the party against whom the wiretap claims were asserted was not a party to the litigation concerning the fiduciary claims. *Id.* ("The wiretap claims...seek damages for the independent, unlawful conduct of Noel Gimbel."). The court further explained, "[s]everance is also appropriate in this case because of the '[s]ubstanital trial disruption [that] would result from the necessity of continuous [limiting] instructions to the jury" and the "great danger of confusion of the issues by the jury." *Id.* (citation omitted).

Although a court is justified in ordering separate trials when doing so will avoid prejudice, make the proceedings more convenient, **or** promote judicial economy, in this case separate trials would accomplish all three.

Similar to the defendants in *Wells* and *Brunson*, each individual Defendant will be prejudiced if the superficially similar, same causes of action against each one of them individually are tried together with those of the other Defendants. There is a significant risk that, despite any limiting instructions, the "spillover" effect on an individual Defendant will be great and that the numerous extraneous issues and facts surrounding the alleged breach of one contract will all too easily bleed over into the issues and facts surrounding the alleged breach of the other contracts at issue. The jury could easily impute

5

the separate, distinct daily administrative and managerial decisions of one business in the same industry to another in the same industry due to their superficial similarities, not to mention any bad acts on the part of one individual defendant to all the rest, thereby "contaminating" the other individual Defendant's defenses. To allow evidence and arguments related to five discrete contract, estoppel, and unjust enrichment claims against five separate defendants to be heard by the same jury, even with limiting instructions, would "needlessly confuse and misdirect the jury from the central issues" and facts relevant to each claim individually.

Much of the testimony and other evidence will be unique to each set of claims as against each individual defendant. Any inconvenience or lack of economy that might flow from a few duplicative witnesses, if any, "would pale in comparison to the prejudice that would befall" the individual Defendants if the issues relevant to the claims asserted against them severally were tried together. All these individual differences would be lost in this act of throwing them into the same trial cauldron and mixing them all together into one factual and legal stew for the jury's consumption. To avoid prejudice to the individual Defendants, confusion of the issues, and to promote judicial efficiency, each individual defendant respectfully requests that the court separate the trial on all counts against them from the trials on all the same counts directed at the other individual defendants.

**Proposition II**
**In the Alternative, Severance of the claims against each individual defendant is Warranted under Federal Rule of Civil Procedure 21**

A motion to sever claims under FED. R. CIV. P. 21 is distinct from a motion for separate trials under FED. R. CIV. P. 42. *AG Equipment*, 2009 WL 236019 at *1 (citing

6

*Chrysler Credit Corp. v. County Chrysler, Inc.*, 928 F.2d 1509, 1519 n.8 (10th Cir. 1991)). "If a claim is severed under Rule 21, it proceeds as a 'discrete, independent action and the trial court may render final, appealable judgment on the severed claim, notwithstanding the continued existence of unresolved claims in the remaining action.'" *Id.* (quoting *E.S. v. Independent Sch. Dist. No 196 Rosemount-Apple Valley*, 135 F.3d 566, 568 (8th Cir. 1998)). "Although Rule 21 is procedurally distinct from Rule 42(b), a decision to sever claims or issues under Rule 21 is discretionary and the Court will apply the same standard of review that it would to a request for separate trials under Rule 42(b)." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 n.19 (5th Cir. 1993). "Courts have interpreted Rule 21 to apply when the claims asserted do not arise out of the same transaction or occurrence or do not present some common question of law or fact." *United States v. Precision Impact Recovery, LLC*, CIV 09-925, 2010 WL 3749391 at *1 (W.D. Okla. Sept. 21, 2010) (citation omitted). Under Rule 21, "the court has virtually unfettered discretion in determining whether or not severance is appropriate." *Grigsby v. Kane*, 250 F. Supp. 2d 453, 456 (M.D. Pa. 2003) (citation omitted). Specifically, "the Court should consider 'potential prejudice to the parties, potential confusion to the jury, and the relative convenience and economy[,]'" as well as "separability of law and logic" when deciding whether to sever claims. *AG Equipment*, 2009 WL 236019 at *2 (quoting *In re Beverly Hills Fire Litigation*, 696 F.2d 207, 216 (6th Cir. 1982)); *Precision Impact Recovery*, 2010 WL 3749391 at *1.

I. **Plaintiff has failed to assert any right to relief that can serve to impose joint, several, or alternative liability against more than one defendant at the same time, and hence fails to meet this minimum requirement for proper permissive joinder under FRCP 20(a)(2)(A), and therefore severance is proper under FRCP 21.**

Federal Rule of Civil Procedure 20(a)(2)(A) provides:

(a) Persons Who May Join or Be Joined.

7

\*\*\*\*

> (2) *Defendants.* Persons—as well as a vessel, cargo, or other property subject to admiralty process in rem—may be joined in one action as defendants if:
>
>> (A) any right to relief is asserted **against them jointly, severally, or in the alternative** with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences…(*emphasis added*)

"Parties of a lawsuit are misjoined when they fail to satisfy either of the preconditions for permissive joinder set forth in Rule 20(a)". *Bailey v. N. Tr. Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000) (citations omitted). When courts have focused on the first permissive joinder precondition—codified in Rule 20(a)(2)(A), formulations of the precondition almost always resemble the following:

> "At the same time, there are two fundamental prerequisites for joinder under **Rule 20(a)**—namely, that the right to relief be(ing) asserted…relat(e) to or aris(e) out of the same transaction or occurrence or series of transactions or occurrences…"

*Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 78 (E.D. Wis. 1985).

But, as the court in *In re: Chochos*, 325 B.R. 780, 786 (Bankr. N.D. Ind. 2005), so perceptively notes, a "[p]laintiff must also seek to hold the defendants **jointly, severally or alternatively liable** as a result of the same transaction or occurrence". Without such an assertion of joint, several, or alternative liability, "[j]oinder would require nothing more than a prosecution based upon the same cause of action or legal theory". *Id.* Rule 20(a) "[i]s not so flexible that (it) will permit a single proceeding to be brought against multiple defendants simply because they are all liable to the plaintiff under the same theory or similar causes of action". *Id.* At 785, (quoting *In re: Nuclear Imaging Systems, Inc.*, 277 B.R. 59, 63 (Bankr.E.D.Pa.2002)).

> **a. Because none of the individual defendants are parties to the contracts of the other defendants, they are not in privity with plaintiff in regard to those other contracts, and hence cannot be jointly, severally, or alternatively liable for their breach.**

8

In Wisconsin, as in most jurisdictions' law of contracts, "[o]nly a party to a contract may enforce it unless the contract is made for the benefit of a third party". *E. Lake Towers Corp. Ctr. Ltd. P'ship v. Scott Paper Co.*, 347 F. Supp. 2d 629, 632 (E.D. Wis. 2004) (citing *Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.,* 231 Wis.2d 404, 409, (Ct. App. 1999)). The simple corollary to this basic rule of law is that a contract may only be enforced as against another party to it, unless there is some extracontractual legal theory that serves to bring such a non-party under the penumbra of any such contract's reach. Plaintiff has alleged no such basis of non-party contractual liability as against any of the Defendants in its Complaint, nor is any such basis upon which the Plaintiff could have done so, even in theory, at all readily apparent.

As the *East Lake Towers* court noted, in the absence of privity or some legal theory that dispenses with the default requirement of privity, a breach of contract claim cannot withstand a rule 12(b)(6) motion to dismiss for failure to state a claim. *Id.* And clearly, if there is the absence of a contract claim at all with regard to a particular party, there can be no joint or several liability imposed against them for its breach. *E.g., Turfmasters, Inc. v. Tri Cty. Tree & Turf, Inc.*, WL 38915, at *3 (Ohio Ct. App. 1991) (concluding that "Other persons may be jointly liable for the damages awarded only if it is found that they are co-promisors on the same breached contract"); *Coke v. Brunswick-Balke-Collender Co.*, 270 Mich. 233, 235–36, 258 N.W. 257, 258 (1935) (noting that the complaint "[s]ets up and counts on breaches of two separate contracts. Neither defendant had any part in the contract of or breach by the other"…and as a result, "[i]n no sense can it be said that defendants are severally or jointly and severally liable for the breach of either contract, nor that the same liability is asserted against both."); *Lithia Lumber Co. v. Lamb*, 443 P.2d 647, 649 (Or. 1968). And, alternative liability is a burden shifting paradigm only applicable in the tort context, and hence not relevant to a breach of contract claim.

*E.g., Collins v. Eli Lilly Co.*, 342 N.W.2d 37, 45 (Wis. 1984). Because none of the Defendants are in any sense obligors under the contracts of the others, Plaintiff's breach of contract claims against them are entirely individual, and hence fail rule 20(a)(2)(A)'s requirement that a theory or recovery allowing joint, several, or alternative liability be asserted against them. For this reason, each of Plaintiff's breach of contract claims should be severed pursuant to FRCP 21.

> **b. Because none of the individual defendants manifested an intention on the behalf of the other defendants to act or refrain from acting in such a way so as to justify the plaintiff as promisee to understand they were making a commitment on these other defendants' behalf, they could not be each other's' promisors, and hence cannot be jointly, severally, or alternatively liable with regard to their conduct under a theory of promissory estoppel.**

Wisconsin has recognized promissory estoppel as a cause of action as defined in Restatement (First) of Contracts § 90, which reads:

> A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. (Am. Law Inst. 1932).

As the Wisconsin Supreme Court explained in *Hoffman v. Red Owl Stores, Inc.*, 133 N.W.2d 267, 275 (Wis. 1965), this means in relevant part that "[t]he promise (a claimant seeks to rely upon must be) one which the **promisor** should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promise". *Id.* (emphasis added). And, a "promisor" is the party manifesting the intention of a "promise". Restatement (Second) of Contracts § 2 (Am. Law Inst. 1981). A "promise" is:

> "[a] manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." *Id.*

Simply put, none of the individual defendants displayed any signs they intended to act, or refrain from acting in any regard with the operations and business decisions of the separate defendant

10

facilities. The only actions they took, and the only manifestations of intentions to act or refrain from acting they made were with regard to the conduct of their own, entirely separate affairs. In the absence of any such manifestation regarding the affairs of the other defendants' businesses, they gave no "promise", and hence could not be "promisors" on behalf of these other facilities. Promissory estoppel requires both a promise and a promisor in addition to a promisee. Plaintiff's complaint alleges no facts that could even arguably make the individual defendants promisors making promises on behalf of the other defendants.

Because the individual Defendants, to the extent they may have arguably given any such promise, did so solely in connection with their own facilities, they cannot be jointly, severally, or alternatively liable for the actions or manifestations these other defendants may have taken in connection with their own separate facilities. For this reason, Plaintiff's promissory estoppel claims against each defendant are entirely individual, and hence fail rule 20(a)(2)(A)'s requirement that a theory of recovery allowing joint, several, or alternative liability be asserted against them. Therefore, each of Plaintiff's promissory estoppel claims should be severed pursuant to FRCP 21.

c. **Because each individual defendant, to the extent they may have received any benefits from plaintiff, received such benefits solely in connection with their own individual businesses, they cannot have been unjustly enriched on behalf of or in relation to these other defendants, and hence cannot be jointly, severally, or alternatively liable for any such unjust enrichment these other defendants may have received.**

According to Civil jury instruction 3028, a plaintiff must prove the following elements to prevail on an unjust enrichment claim under Wisconsin law:

(1) a benefit conferred upon the defendant by the plaintiff; (2) knowledge or appreciation of the benefit by the defendant; and (3) acceptance or retention by the defendant of such

benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof.

As the plaintiff's own complaint makes clear, plaintiff provided services to each "respective facility" under "separate" agreements. Complaint, ¶ 13. However, Plaintiff's complaint does not, and could not credibly allege that each defendant operated as anything other than an entirely separate, autonomous business. If they were not, why would there have been a need to conclude separate agreements with each defendant facility for substantially the same services provided to each? Clearly, each individual facility received its own separate services unrelated to, and contractually and circumstantially distinct from those of each of the other defendant facilities. So, logically, any benefits that may have been conferred would have been conferred to separate, autonomous businesses, on terms and pursuant to representations each separate facility made based on its own conception of its individual business needs and preferred practices. And, any benefit derived thereby would have redounded to, and been solely in the control of, each defendant individually.

Because each individual defendant, to the extent it received any benefit that might serve to satisfy the first element of unjust enrichment under Wisconsin law, received discrete benefits that no other individual defendant had a claim to, or practical means of diverting to its own benefit, plaintiff's unjust enrichment claims against them are entirely individual, and hence fail rule 20(a)(2)(A)'s requirement that a theory or recovery allowing joint, several, or alternative liability be asserted against them. For this reason, each of plaintiff's unjust enrichment claims should be severed pursuant to FRCP 21.

**II. Plaintiff's claims against each Defendant should be severed under FRCP 21 for the further reasons that they do not arise out of the same transaction or occurrence, they do not implicate the same questions of law and fact, and that**

**failure to sever them would prejudice each individual Defendant, and decrease judicial economy.**

In *AG Equipment*, the court found that it was necessary to sever breach of contract claims against one defendant from the intentional interference with contract, unjust enrichment, and federal Computer Fraud and Abuse Act claims against another defendant because of the likelihood of prejudice. 2009 WL 236019 at *1-2. The court severed the claims despite having previously consolidated the cases because they shared the same facts and evidence and arose from the same transaction. *Id.* at *3. The court explained that the risk of jury confusion and prejudice to the breach of contract defendant was "so great that the Court would abuse its discretion if it failed to sever or order separate trials of these matters." *Id.* at *2. Although the court recognized that ordinarily jury instructions would be sufficient to ensure that the jury considered the evidence against each party in isolation, the court found that there was a likelihood that plaintiffs would "attempt to use their claims against the second defendant to introduce irrelevant and prejudicial evidence against" the breach of contract defendant. *Id.* The court further explained, "[t]he risk that a jury would improperly consider plaintiffs' evidence against Heidenreiter when deliberating on the breach of contract claim against AIG is substantial, and this type of jury confusion would deprive AIG of a fair trial." *Id.* The court noted that the evidence against Heidenreiter would include "emotionally charged" testimony, which could unfairly prejudice AIG. *Id.* Specifically, the court stated:

> Kurtz's video deposition testimony will be offered as evidence of her emotional state. Kurtz's feelings about being accused of fraud are not relevant to the breach of contract claims, but it would be natural for a jury to feel sympathetic when they see a video of a woman with late stage terminal cancer talking about how distressed she felt to be accused of participating in a fraud. . . . The claims against Heidenreiter include such emotionally charged language as "betrayed," "revenge," "emotional distress," etc. These claims are largely (if not wholly) irrelevant to the breach of contract claims, but are highly confusing and designed to evoke sympathy for plaintiffs.

*Id.*

Similarly, where a defendant will be forced "to participate in unnecessary litigation," severance under Rule 21 is proper. *Precision Impact Recovery*, 2010 WL 3749391 at *2. In *Precision*, the plaintiff subcontractor had filed suit in Texas against the defendant contractor and its Texas surety and had filed a second suit in Oklahoma against the same defendant contractor and its Oklahoma surety. *Id.* at *1. The Texas action was transferred to the United States District Court for the Western District of Oklahoma, and the two cases were consolidated. *Id.* In response to the consolidation, the defendant contractor and its Oklahoma surety moved to sever the Oklahoma and Texas cases into separate actions under Rule 21. *Id.*

The defendant contractor and its Oklahoma surety argued that severance was appropriate because "the claims in each case did not arise out of the same transaction or occurrence in that two distinctively different projects [were] involved and the proof as the Oklahoma case [would] not be the same as that raised in the Texas case." *Id.* The defendant contractor and its Oklahoma surety further argued that keeping the cases together would act as an impediment to settlement and that trial strategies for the two cases were "materially differ[ent]." *Id.* In contrast, the plaintiff subcontractor argued that severance was inappropriate because the terms of the agreement for the Oklahoma projects and the agreement for the Texas project were identical and that "resolving the underlying matter of the pricing controversy [would] involve the exact same evidence." *Id.* at *2. The plaintiff further asserted that the majority of witnesses resided in Oklahoma and that consolidation of the cases would reduce litigation costs for the parties and promote judicial economy. *Id.* In rebuttal, the defendant contractor and its Oklahoma surety argued "the evidence will materially differ because this case involves three different projects with two different sureties as defendants," explaining that the Oklahoma surety "did not issue any bond for the Texas project and is not liable in any way for the Texas project, and likewise,

14

[the Texas surety] did not issue any bond for the Oklahoma project and is not liable in any way for the Oklahoma project. *Id.*

> In *Precision*, the court granted the motion to sever, reasoning:
>
> [T]he Court finds that severing the Oklahoma and Texas cases and requiring plaintiff to address each surety independently would best promote the efficient administration of justice. Otherwise, it appears that Precision and NAS would be prejudiced in that these defendants would be forced to participate in unnecessary litigation. Also critical to the Court's determination is that the evidence, litigation tactics and trial strategy appear to vary materially as between the Oklahoma and Texas cases. In this respect, the Court finds those parties and claims that are not conveniently prosecuted together should be jettisoned, while preserving the parties and claims that are properly before it, and this will promote judicial economy and efficiency. Further, the Court concludes that severance will not unduly inconvenience any party.

*Id.*

As in *AG Equipment*, the risk that possible testimony offered in furtherance of the Plaintiff's allegations of willful and/or intentional conduct as against one individual defendant will be "emotionally charged" is great. The introduction of any such evidence with regard to the conduct of one individual defendant would be entirely irrelevant and prejudicial evidence against the other individual defendants, all of whose course of business dealings with the plaintiff were and are entirely separate matters governed by separate contracts implemented by the actions and decisions of entirely different people.

Similar to the contractor defendant and its Oklahoma surety in *Precision*, the individual Defendants will "be forced to participate in unnecessary litigation" if the claims against each one of them are not severed into separate matters. In fact, *Precision* is entirely on point in this matter: despite that fact "[t]he terms of the agreement for the Oklahoma projects and the agreement for the Texas project were identical", *Precision,* at *2, the court severed the claims because the two surety defendants had no involvement with or any liability for the actions and contractual obligations of the other, just as here, where the individual defendant long-term care facilities are

15

independent from each other, and are not in any way liable for or in control of the separate business decisions of the others. For the foregoing reasons, the individual Defendants request, in the alternative, that the court utilize its discretion to sever the claims against each one of them individually into separate matters to avoid jury confusion and prejudice to each of them. *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir.1985) (noting that "'[r]ule 21 gives the court discretion to sever any claim and proceed with it separately if doing so will increase judicial economy and avoid prejudice to the litigants.'") (quoting 7A Wright and Miller, Federal Practice and Procedure § 1958, at 664–65 (footnotes omitted)).

And finally, as another Wisconsin federal court has noted, "[w]hether the same general principles of law are applicable is no part of the prescribed (rule 20(a)(2)(B) common question of fact or law) test" for the appropriateness of any attempted permissive joinder. *Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X Int'l, Inc.*, 227 F. Supp. 365, 373–74 (W.D. Wis. 1964). As the *Sun-X* court further reasoned, "[t]o rule otherwise would in effect permit a creditor, such as a bank, to bring a single action against all debtors whose obligations arose out of promissory notes, upon the theory that a common question of law was involved". *Id.* (quoting *Federal Housing Administrator v. Christianson*, 26 F.Supp. 419 (D.C.Conn.1939)). As previously stated, "[R]ule 20(a) "[i]s not so flexible" as that. *In re: Chochos*, at 785. *Sun-X* provides further useful guidance to the instant case in its discussion and ratification of the common question of fact analysis in *Federal Housing Administrator*, as well. *Id.*, at 373-74. There, the plaintiff brought its first count against three defendants on one promissory note, and a second count against two of those same defendants on another, separate promissory note—the court concluded that under these circumstances, there was also no common question of fact sufficient to justify joinder of these separate counts. One only has to substitute "contract" for "promissory note", and this

16

conclusion applies with equal force to plaintiff's instant complaint to conclude there are no common questions of law or fact as amongst the various counts plead against each individual defendant.

## Conclusion

To avoid prejudice and jury confusion, and in the interests of judicial economy and convenience, all the Defendants request that the court order separate trials on the claims against each one of them individually. In the alternative, all the Defendants request that the court sever the claims between the Plaintiff and them individually so that the litigation between them and the Plaintiff can proceed as discrete actions and not be unnecessarily and unfairly burdened with the facts and law relevant to the superficially similar, but in actuality factually and legally very different claims brought against the other defendants.

Rinehart Scaffidi & Rinehart, LLC

By: /s/ William A. Rinehart II
William A. Rinehart II
State Bar No. 1055477
Attorneys for Defendants
P.O. Box 11975
Milwaukee, WI 53211
Phone: (414) 963-9303
Fax: (414) 963-1376
E-Mail: warinehartii@rsrattorneys.com