UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

KINDRED REHAB SERVICES, INC.
d/b/a RehabCare,

    Plaintiff

v.                                                          Case No. 17-cv-910

MOUNT CARMEL HEALTH CARE, LLC
d/b/a BURLINGTON MEDICAL AND
REHAB CENTER, et al.,

    Defendants.

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION
TO ALL DEFENDANTS' MOTION FOR SEPARATE TRIALS
OR TO SEVER CERTAIN CLAIMS**

## I. INTRODUCTION

*[The Federal Rules of Civil Procedure] should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.*

At the absolute earliest opportunity, Defendants[1] violated the most basic tenant of the Federal Rules of Civil Procedure with the filing of their Motion for Separate Trials or to Sever Certain Claims [Dkt. 14, 15] (the "Motion").[2] *Cf.* FED. R. CIV. P. 1 (quoted above). This action is a routine collection case against Defendants seeking amounts Defendants failed to pay Plaintiff, Kindred Rehab Services, Inc. d/b/a RehabCare ("RehabCare") under materially similar contracts

---

[1] Mount Carmel Health Care, LLC d/b/a Burlington Medical and Rehab Center ("Burlington"); Colonial Manor Health Care, LLC d/b/a Colonial Medical and Rehabilitation Center ("Colonial"); Eastview Health Care, LLC d/b/a Eastview Medical and Rehabilitation Center ("Eastview"); San Luis Health Care, LLC d/b/a Maple Ridge Rehab and Care Center ("Maple"); North Ridge Health Care, LLC d/b/a North Ridge Medical and Rehabilitation Center ("North Ridge"); Sheridan Medical, LLC d/b/a Sheridan Medical Complex; and Woodstock Health Care, LLC d/b/a Waters Edge Rehab and Care Center ("Waters Edge") are collectively the "Defendants" and individually each a "Defendant."

[2] Page citations to the Motion refer to the Brief in Support filed as Docket 15.

with each Defendant. The Motion seeks to unnecessarily multiply the burden on the Court and RehabCare by either: (1) requiring seven separate trials; or (2) total severance of the claims into seven lawsuits.[3] *Cf.* FED. R. CIV. P. 1. For a number of reasons, the Motion must be denied.

Defendants failed to pay for therapy services provided by RehabCare to residents of skilled nursing facilities owned/operated by each Defendant despite receiving compensation for these services (in some instances from Medicare). RehabCare provided the same type of services to each Defendant under separate but materially similar Agreements, defined *infra*, all effective the same day and signed by the same person. The same RehabCare representatives discussed invoices and unpaid services with the same agents for Defendants. The same counsel represents all Defendants. Defendants filed almost identical Answers and asserted the exact same defenses.

Moreover, there is no undue prejudice to Defendants in joinder, but even if there were, jury or limiting instructions will prevent any "spillover" concern raised by Defendants' Motion. In fact, RehabCare would be prejudiced if this action were split into separate trials or claims severed, because RehabCare would be forced to litigate the same claims with predominantly the same witnesses and proof seven times. Worse, there are four other actions[4] pending in other federal jurisdictions[5] in which Defendants have filed similar motions, which would result in five actions becoming thirty actions. The administrative effort required by the court system is enough reason to deny the Motion. The existing five actions should be consolidated, if anything, but

---

[3] Defendants erroneously assert that "severance of the claims would result in two independent actions." *See* Motion at 2. But there are seven Defendants. If the Court severs claims as to each Defendant, there will be seven separate actions.

[4] Specifically, the other actions (collectively "Related Lawsuits") filed by RehabCare or its separate affiliate are styled: *Kindred Rehab Services, Inc. v. Cambridge Health Care, LLC, et al*. Case No. 17-cv-00458 (S.D. Ohio); *RehabCare Group East, Inc. v. Bentwood Health Care, LLC, et al*., Case No. 4:17-cv-540 (W.D. Mo.); *RehabCare Group East, Inc. v. Adel Healthcare Management, LLC, et al*., Case No. 4:17-cv-244 (S.D. Iowa); and *RehabCare Group East, Inc. v. Forest Hills Health Care, LLC, et al.*, Case No. 17-CV-390-JHP-JFJ (N.D. Okla.).

[5] RehabCare filed actions against facilities in five separate states and grouped the defendants in each state together to avoid personal jurisdiction issues.

given Defendants' Motion, it does not appear Defendants would consent.

Further, it is premature to sever or order separate trials. The Court and parties do not have the benefit of initial disclosures, much less depositions and documentary evidence. If Defendants wish to renew this motion after close of discovery with actual proof of possible prejudice or reason for severance, there would be no prejudice to Defendants in the intervening period.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Effective October 1, 2016, RehabCare executed a Therapy Services Agreement with each Defendant to provide therapy-related services to residents of skilled nursing facilities owned and/or operated by each Defendant (collectively, "Agreements," individually an "Agreement") (attached as **Exhibits 1-7**).[6] RehabCare's then-Chief Financial Officer, James Mattingly ("Mattingly"), signed each Agreement for RehabCare. "JB" signed for each Defendant as Manager of each. *See id*. "JB" is Judah Bienstock ("Bienstock"), a member of each Defendant.

The Agreements are all materially the same and contain the same obligations for RehabCare and each Defendant. *Id.* ¶¶ 1-2. RehabCare provides the same type of services per each Agreement under the same healthcare regulatory framework and regularly invoiced each Defendant for services rendered. *See id*. Particularly relevant to this action, each Agreement requires payment within forty-five days of an invoice, and late payments accrue interest at 1½% per month. *Id.* ¶ 4. Each Agreement provides that if RehabCare has to use an attorney to collect amounts owed, each Defendant "shall be responsible for payment of all of RehabCare's legal fees and other costs of collection." *Id*. The term for all Agreements began October 1, 2016 with automatic renewal unless otherwise terminated by the same processes. *Id.* ¶ 5.

---

[6] The Agreements contain confidential pricing information. RehabCare has attached a redacted version. Unredacted copies can be provided upon request and subject to appropriate confidentiality protections.

3

The Agreements require any notices the parties were required or wanted to provide be sent to each Defendant and to Midwest Geriatric Management, LLC ("MGM") which manages Defendants' facilities. *Id.* ¶ 7(i). RehabCare consistently corresponded with Defendants' same agents about unpaid amounts, and mostly through these individuals' MGM email accounts. For example,[7] Bienstock suggested that "[m]aybe we can have a meeting next week and discuss a global payment resolution." *See* Email J. Bienstock to M. Daniels, et al. (Mar. 8, 2017) (attached as **Exhibit 8**). Stephen Wertman, MGM's Chief Financial Officer, sent RehabCare a "plan to catch up the payment" that jointly addressed multiple facilities, including Defendants. *See* Email S. Wertman to M. Daniels (May 19, 2016) (attached as **Exhibit 9**).

Defendants and RehabCare communicated via the same people. *See, e.g.*, Email J. Bienstock to J. Mattingly, et al. (July 28, 2016) (MGM facilities' expected payment) (attached as **Exhibit 10**); Email M. Daniels to M. Werthmuller (Aug. 31, 2016) (MGM's payments for a "total of 21 locations paid in the amount of $1.05M.") (attached as **Exhibit 11**); Email M. Daniels to S. Wertman (July 15, 2016) ("status of missed payments for Midwest Geriatrics accounts.") (attached as **Exhibit 12**); Email J. Mattingly to J. Bienstock (Sept. 30, 2016) (MGM-affiliated facilities 80% owned by five individuals and attaching a draft personal guarantee for multiple facilities' debts) (attached as **Exhibit 13**). RehabCare and Defendants viewed the Agreements as part of the same relationship and series of transactions.[8]

On June 5, 2017, RehabCare sent termination notices for each Agreement for failure to pay. *See* Termination Notices, collectively **Exhibit 14**. Each notice was sent to the relevant

---

[7] Discovery has not yet commenced, and these documents are provided for illustration only. RehabCare anticipates that discovery will reveal additional, relevant information demonstrating that its causes of action against each Defendant arise out of the same series of transactions or occurrences.

[8] Given that many of the individual principals, representatives, and affiliates of the Defendants are the same and acted on behalf of each Defendant, it is entirely possible that discovery will reveal claims against those parties and RehabCare reserves the right to amend to assert any such claims, which will further support this action remaining as one intact piece of litigation.

4

Defendant, MGM, and Bienstock terminating the Agreement effective June 30, 2017. *See id.* Defendants' collective representative, Barry Jeremias ("Jeremias") negotiated a global extension through July 5, 2017 for all Defendants. *See* Email D. Curnutte to B. Jeremias (June 7, 2017) (attached as **Exhibit 15**); Email D. Curnutte to B. Jeremias (June 8, 2017 3:54 pm) (attached as **Exhibit 16**). RehabCare confirmed Jeremias was their authorized representative and agreed to a payment schedule for services through July 5. *See* Exhibit 15. Jeremias indicated that checks would be provided for all facilities' payments. *See* Email B. Jeremias to G. Mack, et al. (June 8, 2017 2:57 pm) (Exhibit 16). To the very end of the parties' relationship, the same representatives for each Defendant negotiated and discussed the matters that are the subject of this action.

RehabCare filed its Complaint against Defendants alleging each breached its Agreement. *See* Compl. ¶¶ 13-27 [Dkt. 1]. RehabCare alternatively asserted claims for promissory estoppel, based on Defendants' representations to RehabCare, and its reliance to its detriment and for unjust enrichment, based on services for which Defendants received a valuable benefit and did not pay RehabCare to its detriment. *Id.* ¶¶ 28-40. Defendants filed separate, but essentially identical, answers and defenses and jointly filed the Motion. *See* Answers [Dkt. 17-23].

### III. ARGUMENTS AND AUTHORITY

#### A. The Defendants are appropriately joined pursuant to FED. R. CIV. P. 20(a).

RehabCare properly joined Defendants in this action pursuant to FED. R. CIV. P. 20(a)(2):

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Further, "[t]he court may grant judgment . . .against one or more defendants according to their liabilities." FED. R. CIV. P. 20(a)(3).

5

"Under Rule 20, joinder of claims, parties and remedies is strongly encouraged." *Insolia v. Phillip Morris, Inc.*, 186 F.R.D. 547, 548 (W.D. Wis. 1999) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). "The permissive joinder doctrine is animated by several policies, including the promotion of efficiency, convenience, consistency, . . . and fundamental fairness." *Id*. (citing *Intercon Research, Etc. v. Dresser Indus.*, 696 F. 2d 53, 57-58 (7th Cir. 1982)); *see also Hohlbein v. Heritage Mut. Ins. Co.*, 106 F.R.D. 73, 78 (E.D. Wis. 1985) ("The unmistakable purpose for the Rule is to promote trial convenience through the avoidance of multiple lawsuits, extra expense to the parties, and loss of time to the Court and the litigants appearing before it."). "These policies, not a bright-line rule should govern whether the 'same transaction' requirement imposed by Rule 20 has been satisfied." *Insolia*, 186 F.R.D. at 549 (citing James Wm. Moore et al., *Moore's Fed. Prac*. § 20.05[1] (3d ed. 1999). "Rather than developing a single test, courts evaluate this issue on a case-by-case basis." *Id*. (citing 7 C. Wright et al., *Fed. Prac. & Proc*. § 1653 at 382 (2d ed. 1986)). "Nevertheless, some courts decide the first prong of the permissive joinder standard by asking whether there is a logical relationship between the operative facts and claims of a lawsuit." *Id*. (internal citations omitted).

RehabCare's claims arise out of the same series of transactions or occurrences. Even without the benefit of discovery, it is clear that the Agreements, each Defendant's breaches of its respective Agreement, and failures to pay are all linked together and form a logical relationship. All Agreements are signed by the same person and contain identical terms. *See* Agreements, Exhibits 1-7. The Agreements are materially similar, and any notices must be sent to MGM. *See id*. MGM managed Defendants, including determining timing and amount Defendants paid to vendors such as RehabCare. *See* Exhibits 8-13, 15-16. RehabCare dealt with the same decision-makers and representatives for each Defendant who consistently made joint decisions relating to

6

Case 2:17-cv-00910-NJ   Filed 11/17/17   Page 6 of 17   Document 28

contracts and payments. A logical relationship exists among RehabCare's claims against each Defendant such that all claims arise out of the same series of transactions or occurrences.

Discovery, depositions, testimony, and proof of RehabCare's claims against Defendants will overlap and be duplicative. The corporate representatives for RehabCare and many of its witnesses will likely be the same as to each Defendant. Defendants' decision-makers and agents, as stated above, were the same and would have to testify for all. RehabCare's discovery requests to each Defendant will likely be the same and documentary evidence will overlap. Further, Defendants' pleadings thus far have shown that they are in lock-step; their Answers and defenses are the same. *See* Dkt. 17-23.[9] Defendants are all represented by same counsel.[10] *See id*. Joining Defendants in one action is the most efficient and economical use of the Court's and the parties' time and resources. Separating into seven trials or seven actions adds unnecessary expense and delay. It certainly does not promote the policies of efficiency, convenience, or consistency.

Moreover, fundamental fairness is satisfied by maintaining the claims as one action and one trial. As analyzed *infra* sections B and C, although Defendants make conclusory allegations about the possibility of prejudice and "spillover" testimony, they have not demonstrated that any actual prejudice might occur. They argue that a jury might be confused regarding the actions of seven different Defendants – but the seven Defendants all took the same actions through the same representatives, and such a worry is speculative and unfounded. In contrast, the prejudice

---

[9] The defendants in Related Lawsuits appear to be filing motions similar to the Motion. Great swathes of those motions make the same arguments made in the Motion here. *See* Dkt. 20 in S.D. Ohio case; Dkt. 27 in N.D. Okla.; Dkt. 20 in W.D. Mo. Case; Dkt. 19 in S.D. Iowa. This demonstrates Defendants and defendants in the Related Lawsuits are treating the current five cases the same. Five separate but materially similar lawsuits already exist due to jurisdictional requirements. How could breaking five lawsuits into thirty lawsuits or trials promote judicial economy?

[10] Current defense counsel of record here and in each of the Related Lawsuits are different, but what appears to be national counsel for all defendants has contacted plaintiffs' counsel in several of the Related Lawsuits. Indeed, he has already submitted a request for admission *pro hac vice* here and in Oklahoma, and in Missouri he is counsel of record. This shows defendants are treating all lawsuits the same and should be joined where possible.

7

to RehabCare is real and immediate; separate trials or severance of claims results in duplicative motions, depositions, discovery, and trials. Fundamental fairness weighs in favor of joinder, especially given Defendants' pre-litigation behavior in handling all discussions jointly.

Joinder of Defendants also satisfies the second prong of permissive joinder under Rule 20. Undeniably, questions of law and fact are common to all Defendants. *See* FED. R. CIV. P. 20(a)(2)(B). RehabCare asserted the same claims against each Defendant requiring resolution of the same issues of law, particularly interpretation of materially identical Agreements. Indeed, separate trials or severance of claims creates the risk of inconsistent interpretations of the same contract provisions. Questions of fact will be common to all Defendants too, including: who signed each Agreement; what were the terms of each Agreement with respect to payment and the parties' obligations; who authorized each Defendant to pay (or not pay) amounts due; and whether each Defendant did pay all amounts due. Indeed, the only question that will have a different answer is: how much does each Defendant owe RehabCare?

RehabCare properly joined Defendants pursuant to Rule 20(a)(2). Joinder will promote efficiency, consistency, convenience, and fundamental fairness. RehabCare's right to relief arises out of the same series of transactions or occurrences. RehabCare's allegations against each Defendant involve the same questions of law and fact. Joinder was entirely proper and will promote judicial economy and efficiency without prejudice to any party.

### B. Defendants' Motion for separate trials should be denied.

There is no basis to grant Defendants' Motion for separate trials as there is no risk of prejudice, and neither convenience nor expedition and economy can be accomplished by separate trials. It is further premature to grant such a motion without allowing discovery. FED. R. CIV. P. 42(b) provides in relevant part that "[f]or convenience, to avoid prejudice, or to expedite and

economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." The Court has discretion to separate trials. *See Houseman v. U.S. Aviation Underwriters*, 171 F. 3d 1117, 1121 (7th Cir. 1999) ("The ultimate decision to bifurcate under Rule 42(b) is at the court's discretion and will be overturned only upon a clear showing of abuse.") (citing *McLaughlin v. State Farm*, 30 F. 3d 861, 870 (7th Cir. 1994)). The Seventh Circuit has analyzed three conditions relating to bifurcation: (1) "whether separate trials would avoid prejudice to a party or promote judicial economy;" (2) "the decision to bifurcate does not unfairly prejudice the non-moving party;" and (3) "separate trials must not be granted if doing so would violate the Seventh Amendment." *Id*. (internal citations omitted). All three conditions require denial of Defendants' Motion for separate trials here.

First, seven separate trials will not promote judicial economy or avoid prejudice to a party. Meeting only one of these criteria is sufficient for a court to exercise its discretion and order separation. Neither is met here. As to judicial economy, as stated above, the witnesses, testimony, and documents are the same or very similar as to each Defendant. RehabCare did not deal with different people for each Defendant with respect to the issues in dispute, *i.e.* amounts owed by each Defendant. Seven separate trials with the same witnesses proffering the same testimony, albeit with differences as to amounts owed, do not promote judicial economy.

Further, as can be seen already even in the early stage of this case, Defendants are taking the exact same positions in their Answers and Motion. Having seven separate trials where they will make the same arguments based on the same set of facts is not a good use of the Court's or the parties' resources. And each Defendant is responsible for RehabCare's costs and attorneys' fees incurred in connection with trying to collect unpaid amounts pursuant to the Agreements. *See* each Agreement ¶ 4. Seven separate trials will only increase the parties' legal fees and costs.

9

Moreover, and as part of both the first and second considerations, separate trials will not avoid prejudice. In fact, it will unfairly prejudice RehabCare as the non-movant by forcing it to present essentially the same testimony and proof seven times. At the risk of repetition, the operative facts are the same: same signatory; same material terms; same representatives for Defendants and RehabCare; and same communications regarding unpaid amounts at issue in this case. The only difference is the specific amounts owed by each Defendant – but testimony regarding the amounts will be proffered by the same witnesses. As the non-moving party, RehabCare will be unduly prejudiced if this matter is bifurcated into seven separate trials.

Defendants will not be prejudiced by maintaining one case and trial. They argue they may be subject to "spillover" testimony or otherwise prejudice, citing cases outside Wisconsin's federal district courts or even the Seventh Circuit dealing with § 1983 claims, police officers' alleged misconduct and municipal liability, wiretapping, and products liability. *See* Motion at 5-6; *Beauchamp v. Russell*, 547 F. Supp. 1191 (N.D. Ga. 1982) (seeking damages for industrial workplace personal injuries); *Donato v. Fitzgibbons*, 172 F.R.D. 75 (S.D.N.Y. 1997) (addressing sanctions for spoliation of evidence by a defendant and its potential effect on claims of plaintiff); *Wells v. City of Dayton*, 495 F. Supp. 2d 793 (S.D. Ohio 2006) (bifurcating § 1983 claims under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) against City of Dayton from claims related to specific officers); *Brunson v. City of Dayton*, 163 F. Supp. 2d 919 (S.D. Ohio 2001) (same); *Cheek v. City of Edwardsville, Kan.*, 514 F. Supp. 2d 1220 (D. Kan. 2007) (§1983 claims as violation of First Amendment rights and contracts with governmental entity); *Sound Video Unlimited, Inc. v. Video Shack, Inc.*, 700 F. Supp. 127 (S.D.N.Y. 1988) (severing wiretap claims in part because it would be tried to the court, not a jury).

Unlike the cases cited by Defendants, this is not a salacious case of tortious misdeeds that will play into the emotions of the jury. This is a commercial collections case based on failure to pay pursuant to contracts or, alternatively, for services provided that remain unpaid or based on representations made and relied upon. Fear of spillover testimony is unjustified; testimony will be the same or substantially similar for each Defendant. Defendants will not suffer any prejudice by having one trial. Nor are claims "superficially similar" as they argue; the claims arise out of the same series of transactions or occurrences and are properly joined. *See id*. at 5.

The Seventh Circuit's final consideration with respect to jury trials is not relevant here. Each Defendant requested a jury trial, and a jury can just as easily (and more economically and efficiently) be called to hear one trial as seven. Defendants argue a jury might be confused absent separate trials, and again that there may be a "spillover" effect even with limiting instructions. *See* Motion at 5-6. But the Court can "assume that the jury follow[s] the instructions as they were provided." *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F. 3d 372, 387 (7th Cir. 2011) (citing *Chlopek v. Fed. Ins. Co.*, 499 F. 3d 692, 702 (7th Cir. 2007)). Indeed, "[t]he district court also gave a proper limiting instruction, which would have mitigated any risk of unfair prejudice. Absent indications to the contrary, we presume that juries heed limiting instructions." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F. 3d 815, 835 (7th Cir. 2016) (citing *United States v. Mallett*, 496 F.3d 798, 802 (7th Cir. 2007)).

Defendants baldly state testimony and evidence will be "unique" to claims against each Defendant. *See* Motion at 6. That is inaccurate. The same players were involved for each Defendant and RehabCare and will be called to testify. Defendants provided only unsupported allegations as to the purported prejudice they might suffer. It is unfair for Defendants to insist on separate trials and repetition of evidence and testimony given Defendants' pre-litigation actions.

Indeed, it was Defendants' representatives who previously raised "global payment resolution" and sent RehabCare proposals incorporating all Defendants. *See* Exhibits 8-13, 15-16.

In sum, there is no reason to grant Defendants' Motion for separate trials. On the contrary, Rule 20 joinder of Defendants is not only permissible; it is the fairest and most judicially economical approach. RehabCare asserted the same claims against all Defendants. The limited documents show testimony and evidence will involve the same series of transactions or occurrences in the execution of the Agreements (same person, same terms) and the failures to pay (decided by the same decision-makers and handled collectively). Alternatively, the Court and parties do not yet have the benefit of discovery. It is premature to grant such a motion when information obtained during discovery will support joinder of Defendants and denial of the Motion for separate trials. RehabCare requests the Court deny the Motion for separate trials.

### C. Defendants' Motion to sever should be denied.

Defendants' request to sever claims is, if possible, even more unwarranted than its request for separate trials. Per FED. R. CIV. P. 21, "[m]isjoinder of parties is not a ground for dismissing an action. . . . The court may also sever a claim against any party." "It is within the district court's broad discretion whether to sever a claim under Rule 21." *Rice v. Sunrise Express, Inc.*, 209 F. 3d 1008, 1016 (7th Cir. 2000) (citing *Hebel v. Ebersole*, 543 F. 2d 14, 17 (7th Cir. 1976)). "Severance under Rule 21 creates two separate actions or suits where previously there was but one. Where a single claim is severed out of a suit, it proceeds as a discrete, independent action. . ." *Gaffney v. Riverboat Servs. of Ind.*, 451 F. 3d 424, 442 (7th Cir. 2006) (quoting *U.S. v. O'Neil*, 709 F. 2d 361, 368 (5th Cir. 1983) (internal quotation marks omitted)); *see also Houseman*, 171 F. 3d at 1122 n. 5 ("Although courts generally use the terms sever and separate interchangeably, they are analytically distinct: 'The procedure authorized by Rule 42(b)

should be distinguished from severance under Rule 21. Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently.'") (quoting *McDaniel v. Anheuser-Busch*, 987 F. 2d 298, 304 n. 19 (5th Cir. 1993)).

***In other words, Defendants' Motion to sever would create seven lawsuits where one clearly suffices.*** "In considering a motion to sever, the Court should consider several things including convenience of the parties, avoidance of prejudice, and judicial efficiency." *Aurora Healthcare, Inc. v. Codonix, Inc.*, No. 03-C-0612, 2005 WL 8147515 at * 5 (E.D. Wis. July 29, 2005) (collecting cases).

Convenience, economy, judicial efficiency, and the avoidance of prejudice do not support severance. RehabCare's witnesses will largely be the same for all. It would be disingenuous for Defendants to argue their witnesses and testimony will all be different given currently available facts. Discovery will likely reveal even more commonality. Severance would create seven cases involving principally the same witnesses, testimony, and documents. This is not economical, efficient, or convenient for the Court or parties. Nor is there prejudice to Defendants by maintaining one action. RehabCare has not asked Defendants to answer for each other's debts.[11] The evidence relating to RehabCare's claims will come from chiefly the same individuals for Defendants – the decision-makers and agents who signed each Agreement, discussed payment options, and sought a "global payment resolution." Other than vague, conclusory allegations of prejudice, Defendants have not demonstrated any actual prejudice they may suffer.

Again, Defendants' case law is not persuasive here. Detailed above, RehabCare properly joined Defendants in this action pursuant to Rule 20(a), which clearly states joinder is permitted

---

[11] RehabCare reserves the right to seek leave to amend its Complaint should discovery reveal evidence that Defendants should be held liable for each other's debts.

13

when "any right to relief is asserted against them jointly, severally, *or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences*." FED. R. CIV. P. 20(a)(2)(A) (emphasis added). In fact, Defendants quote from an Eastern District of Wisconsin case setting forth such language, but immediately argue the Rule requires more. *See* Motion at 8. Defendants spill considerable ink arguing joinder is improper because RehabCare did not seek joint, several, or alternative liability. *See id*. at 8-12. They cite *In re Chochos*, a bankruptcy court opinion from the Northern District of Indiana, to argue joinder is only permitted when seeking joint, several, or alternative liability for the same transaction or occurrence. *See* Motion at 8; 325 B.R. 780, 786 (Bankr. N.D. Ind. 2005). That reads too much into Rule 20, which only requires a right to relief asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." FED. R. CIV. P. 20(a)(2)(A). Rule 20 does not require RehabCare seek the same liability against all Defendants.

Defendants argue that joint, several, or alternative liability is unwarranted. *See* Motion at 9-12. But RehabCare is not seeking that type of liability at this point, nor is it required for permissive joinder. As such, their arguments are irrelevant. *See id*. RehabCare's causes of action as to each Defendant are linked because they arise out of the same series of transactions or occurrences as set forth above. The Complaint is not premised on joint, several, or alternative liability. Defendants' arguments regarding the same are extraneous and immaterial.

Conveniently ignoring the *same series* of transactions or occurrences language, Defendants argue that RehabCare's claims do not arise out of the same transaction or occurrence, relying on two unpublished cases from the Northern and Western Districts of Oklahoma.[12] *See*

---

[12] By doing so, Defendants once again prove that they and defendants in the Related Lawsuits are treating the current cases exactly the same. The defendants in Oklahoma filed their motion for separate trials or to sever claims seven days prior to this Motion. Numerous pages of that brief appear verbatim in this Motion, as well as in the briefs filed in the Ohio, Missouri, and Iowa actions.

14

Motion at 12-17. Outside the Seventh Circuit, they also do not support severing claims here. In *AG Equipment Co. v. AIG Life Ins. Co., Inc.*, different claims were asserted against different defendants. No. 07-cv-0556-CVE-PJC, 2009 WL 236019 at * 2 (N.D. Okla. Jan. 29, 2009). The court noted that plaintiff's litigation strategy tried to use evidence relating to claims against one defendant against the other. *Id*. Even the block quote Defendants cite indicates a very different situation, in which "emotionally charged" testimony existed that might confuse a jury or cause prejudice. *Id*. That is not the case here. RehabCare asserts the same claims against each Defendant, and the same decision-makers and operative set of facts will apply across the board.

Defendants cite *U.S. v. Precision Impact Recovery, LLC* to argue Rule 21 severance is proper where a defendant will otherwise have to participate in unnecessary litigation. *See* Motion at 9; Nos. CIV 09-925-M, CIV 10-446-M, 2010 WL 3749391 (W.D. Okla. Sept. 21, 2010). But the court there found the consolidated actions for two projects to be distinct and that "litigation tactics and trial strategy appear[ed] to vary materially" between them. *Id*. at *1- 2. No matter how Defendants try to argue that the claims here are distinct, they fail. The claims are the same, the decision-makers are the same, the Agreements are the same, and payment (or lack thereof), which is the specific dispute here, and discussions involving payment are all the same. Moreover, RehabCare's litigation strategy will be the same or very similar for each Defendant. Keeping Defendants joined will not create unnecessary litigation. On the contrary, severing the claims creates unnecessary litigation, inconvenience, and expense for all parties and the Court.

Defendants also cite a Western District of Wisconsin case to argue that "whether general principles of law are applicable" is not part of a Rule 20 analysis for permissive joinder and that each Agreement involves different questions of fact. *See* Motion at 16; *Sun-X Glass Tinting of Mid-Wisconsin, Inc. v. Sun-X Int'l, Inc.*, 227 F. Supp. 365 (W.D. Okla. 1964). More than mere

15

general principles of law are at issue here. The Court will have to interpret the same contract provisions relevant to this dispute; severance leads to potentially inconsistent legal interpretation and application. Alternatively, the Court will be applying the same law to the same representations by the same agents of Defendants and other operative facts.

Defendants argue that failure to sever prejudices them and decreases judicial economy. Their allegations are speculative and do not indicate actual prejudice they may suffer. Judicial economy is clearly not served by creating seven separate cases out of one, and it is unreasonable to imply that it is. There will be significant, if not nearly total, duplication of witnesses, testimony, and proof (except as to actual damage amounts). Severance means the Court and parties will do everything seven times over, as each Defendant is already taking the exact same position as the others in this matter. Defendants' Motion to sever should be denied.

## IV. CONCLUSION

RehabCare properly joined Defendants in this straightforward, commercial collection action as RehabCare's right to relief arose out of the same series of transactions or occurrences. The Agreements are the same and signed by the same person. Defendants have always interacted and negotiated with RehabCare via the same representatives. There is no risk of prejudice to Defendants or jury confusion. Economy, convenience, and the avoidance of duplicative litigation will be best served by denying Defendants' Motion. And again, the Court and parties do not have the benefit of discovery yet, and it is therefore premature to sever the claims or separate trials. For the foregoing reasons, RehabCare requests the Court deny Defendants' Motion entirely.

Dated this 17th day of November, 2017.

        Respectfully submitted,

        GODFREY & KAHN, S.C.


        *s/Nina G. Beck*
        Timothy F. Nixon
        State Bar No. 1013753
        Nina G. Beck
        State Bar No. 1079460
        833 East Michigan Street, Ste. 1800
        Milwaukee, WI 53202
        Telephone: (414) 273-3500
        Facsimile: (414) 273-5198
        tnixon@gklaw.com
        nbeck@gklaw.com

        -and-

        Phillip A. Martin
        Laura M. Brymer
        FULTZ MADDOX DICKENS PLC
        101 S. Fifth Street, Ste. 2700
        Louisville, KY 40202
        Telephone: (502) 588-2000
        Facsimile: (502) 588-2020
        pmartin@fmdlegal.com
        lbrymer@fmdlegal.com

        *Counsel for Plaintiff*

18062057.4